**HENDERSON, Price Adm'r, v. BURD et al.**
**No. 143.**

Circuit Court of Appeals, Second Circuit.

Feb. 9, 1943.

---

516

Henry Lichtig, of New York City (David M. Berger, of New York City, of counsel), for appellants.

David Ginsburg, Gen. Counsel, and Brunson MacChesney, Asst. Gen. Counsel, both of Washington, D. C., Irvin C. Rutter, Regional Enforcement Atty., of New York City, and Harry W. Jones, Chief, Appellate and Briefing Branch, and Carl W. Berueffy, Atty., both of Washington, D. C., for appellee.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Pursuant to power conferred by the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq., the plaintiff promulgated Revised Price Schedule No. 95* fixing maximum prices applicable to sales of nylon hose by manufacturers. By section 1401.10 of such schedule wholesalers or jobbers are permitted to sell at the manufacturers' prices "increased by ten per cent." Sales in violation of any price schedule are declared unlawful by section 4 of the Act, 50 U.S.C.A.Appendix § 904, and may be enjoined pursuant to section 205, 50 U.S.C.A.Appendix § 925. Under these sections the suit at bar was brought against the appellants, who are partners trading as Lycoming Hosiery Company. The complaint charged, in substance, that they were selling nylon hose at jobbers' prices when they were entitled to charge only the maximum prices established for manufacturers. A motion for a preliminary injunction, heard upon supporting and opposing affidavits, was granted, and they were enjoined (1) from selling nylon hose at prices in excess of the maximum prices established for manufacturers by schedule 95, and (2) from buying or selling any hosiery, other than nylon, at prices in excess of those established by any other applicable maximum price regulation.

The facts disclosed by the record without substantial dispute may be summarized as follows: Samuel I. Burd, trading as Lycoming Hosiery Mills, started business in 1933 as a selling agent for manufacturers and mills. He says that later he "expanded to jobbing (purchasing goods for my own account and then selling them)." At the end of 1941 he changed the name under which he traded to Lycoming Hosiery Company in order to meet objections raised by the Federal Trade Commission to his use of the word "Mills." In a stipulation filed with the Commission he described himself "as selling agent for Burdwyn Hosiery Mills" and his business as that "of factor or manufacturer's agent." In January, 1942, he took into partnership his brother Martin. For convenience the partnership will be referred to as Lycoming. The merchandise which Lycoming sells is obtained in part by buying the finished product from manufacturers or jobbers and in part by buying yarns and raw materials and having them made into finished hosiery under contract with manufacturers. One manufacturer, but not the only one, with which Lycoming deals is Burdwyn Hosiery Mills, a corporation organized in 1938 under the laws of Pennsylvania. The capital stock of Burdwyn consists of 32 shares of which Samuel owns 15, Martin 6, another brother 10, and a sister 1. Samuel and Martin are the principal officers. Burdwyn owns a manufacturing plant in Pottstown, Pennsylvania, at which were manufactured the nylon hose involved in the case at bar. They were delivered by it to Park Hosiery Dyeing & Finishing Company for dyeing and finishing, and by Park were delivered to Lycoming's customers. Park is a Pennsylvania corporation organized in 1937 by Samuel Burd. He is its sole stockholder. Park occupies part of Burdwyn's plant in return for which it pays a monthly rental of $50 and contributes to the cost of heating, of janitor service and of a watchman. It does not do all of the finishing for Lycoming and Burdwyn. The principal office of Lycoming is located at the factory premises of Burdwyn. No rent is paid for the space so occupied. The books of account of the partnership are kept there and bills to its customers are sent out from there on Lycoming billheads. Martin Burd spends all his time attending to "the pro-

---

\* 7 Fed.Reg. 1386, 1842.

duction end" of the Lycoming business and to buying merchandise. He also sees to the proper delivery of all goods from the finisher to the ultimate purchaser. Samuel Burd resides in Philadelphia but spends from two to four days each week at Lycoming's New York office which is the headquarters for its six salesmen. Monthly bills are sent from Burdwyn to Lycoming, and payments are made by it on the basis of an open or running account. No other correspondence takes place between them. From May 15 to August 15, 1942, the monthly business of Lycoming was about four times that of Burdwyn.

■■■ The case has been argued by the appellants as though it were necessary for the plaintiff to prove them manufacturers if the preliminary injunction is to be supported. It is urged that no justification is shown for disregarding the corporate entities of Burdwyn and Park, since their earlier creation proves that they were not organized for the purpose of evading the Emergency Price Control Act of 1942; and further that the order of the Federal Trade Commission is a final adjudication that Samuel I. Burd, whose business the partnership has continued, is not a manufacturer. But it is not necessary that the appellants should be proven manufacturers of the nylon hose they sold. Concededly they violated the price restrictions of schedule 95 unless they are either "wholesalers" or "jobbers." These words are not defined by the Act but it seems plain that they do not include a manufacturer's selling agent. From an examination of the stipulation filed with the Federal Trade Commission and appended to one of the affidavits before him, the district judge found that "Lycoming was nothing more than a selling agent for Burdwyn, the manufacturer of the nylon hose." Unless this finding must be reversed it is sufficient to support paragraph (1) of the injunction. On appeal from an interlocutory injunction inquiry of an appellate court is limited to whether the district court abused its discretion. United States v. Corrick, 298 U. S. 435, 437, 56 S.Ct. 829, 80 L.Ed. 1263. And ordinarily the granting or denial of a preliminary injunction will not be disturbed on appeal. Myers v. Bethlehem Corp., 303 U.S. 41, 52, 58 S.Ct. 459, 82 L.Ed. 638.

Although the stipulation is only an admission and subject to refutation, we find nothing in the affidavit of Samuel Burd sufficient to refute it. The business relations between Lycoming and Burdwyn are not set forth with sufficient clarity and particularity to overcome the admission of agency, even if Burdwyn be regarded as a distinct corporate entity.

■■ Two other arguments of the appellants require but brief mention. The contention that the plaintiff failed to prove the existence of the usual equitable grounds for relief, such as irreparable damage, is plainly irrelevant. Where an injunction is authorized by statute it is enough if the statutory conditions are satisfied. Securities and Exchange Comm. v. Torr, 2 Cir., 87 F.2d 446, 450. The contention that schedule 95, as construed by the court, compels changes in business practices established in the industry contrary to section 2(h) of the Act, 50 U.S.C.A.Appendix § 902(h), is an attack upon the validity of the regulation, of which the Emergency Court of Appeals established by section 204, 50 U.S.C.A.Appendix § 924, has exclusive jurisdiction.

■ For the foregoing reasons we find no error in the granting of paragraph (1) of the preliminary injunction. Paragraph (2), however, seems to be broader than the facts justify. It restrains the appellants from buying or selling any hosiery other than hosiery covered by schedule 95, at prices in excess of those established by any other applicable maximum price regulation. The only evidence of violation of the Act related to hosiery manufactured by Burdwyn. The only admission that the Lycoming partners are a manufacturer's selling agent refers to Burdwyn as the manufacturer. They apparently acted in good faith under the honest belief that they were "wholesalers or jobbers" of the Burdwyn goods as well as of the merchandise acquired from others. We see no reason to suppose that they would violate price ceilings fixed for other goods. In our opinion the restraint imposed by paragraph (2) should be limited to hosiery other than nylon hosiery which Burdwyn has manufactured for the appellants. As so modified the preliminary injunction is affirmed.